CLANCY *v.* LEACH'S ESTATE.

CLAIM AGAINST DECEDENT'S ESTATE—EVIDENCE.

*A parol contract is claimed to have been made 32 years .ago between C. and L., by which L. agreed to convey to C. 80 acres of land in consideration that C. would support L. and his wife during their lives. Both parties are dead. No deed was ever executed. The estate of C. presents a claim against the estate of L. for the support of L. and his wife during their lives. Three years after it is alleged that the contract was made, L. executed his will, to which C. was a witness, of which he was one of the executors, and whose contents he knew, and to which he made no objection. *Held,* that the will negatived the existence of such a contract, and was a conclusive answer to the claim.

Error to Sanilac; Beach, J. Submitted January 9, 1901. Decided January 29, 1901.

Russell D. Clancy, as administrator of the estate of David Clancy, deceased, presented a claim against the estate of Neal Leach, Sr., deceased, for services rendered by claimant's decedent. The claim was allowed by the commissioners, and defendant appealed to the circuit court. From a judgment for defendant on verdict directed by the court, claimant brings error. Affirmed.

In 1868 Neal Leach, Sr., owned 80 acres of land, on which he and his wife lived. They had five children, of whom Mary Clancy, the wife of David Clancy, was one. David Clancy owned a farm in the vicinity, on which he lived with his wife and family. Neal Leach, Sr., and his wife were old people, and their son Neal, Jr., for some time prior to December, 1868, had hired one Phillips to work the farm and take care of the old people. This son lived in Manistee. Mr. Phillips informed the son that he

---

* Head-note by GRANT, J.

intended to leave.  His father expressed a desire to have
their daughter Mary and her husband live with them.
Neal, Jr., saw them, and arranged that they should move
to their father's farm.  He reported the arrangement to
the old people, and in December, 1868, Mr. Clancy and
his wife moved onto the farm, where they lived together
as one family until their relations were interrupted by
death.  Neal Leach, Sr., died in 1875; the son Neal, in
1876; Mrs. Clancy, in 1890; Mr. Clancy, in 1893; and the
widow of Neal Leach, Sr., in 1894.  After the death of
Mr. Leach, Sr., the widow and David's family continued
to live together as one family.  The same relations con-
tinued during the lives of Mr. and Mrs. Clancy, and after
their deaths; Mr. Clancy's children living upon the farm
and taking care of their grandmother until her death.
There is testimony that in 1871 Neal Leach, Sr., applied
to one Sweet to make a will in favor of Neal Leach, Jr.,
in trust for David Clancy, to insure the support of himself
and wife while they lived.  That will was not drawn,
because Mr. Sweet said he did not know how to draw
such a will.  Mr. Sweet testified:

"The old gentleman, Leach, said why he wanted to
give the place to David Clancy, or that David Clancy
should have it after his death, was for their good support.
I don't know as he said anything about any arrangement
between himself and David Clancy about support."

On January 6, 1872, Neal Leach, Sr., executed a will
by which he devised to each of his children one dollar,
except to his son Neal, to whom he devised the farm on
which he lived.  The will contained this clause:  "But it
is understood that I, the said Neal Leach, Sr., am to have
a life lease of the same during my life and the life of my
wife."  David Clancy was one of the witnesses to this
will.  The testimony on the part of the claimant shows
that David Clancy and his wife were both present when
the instructions to the scrivener for the drawing of the
will were given by Mrs. Leach, who acted as interpreter
for her husband, who spoke Gallic.  He was made one of

the executors; Neal, Jr., being the other. This will was admitted to probate in 1898.

Mr. Phillips testified that Neal Leach, Jr., informed him that the arrangement was that he (Neal, Jr.) was to pay Mr. Clancy a dollar a day for taking care of his father and mother; that about three years afterwards David Clancy told him that they had made a new bargain, and he was to have the farm for taking care of Mr. and Mrs. Leach. One Mrs. Taswell testified that in 1868, about a week after Mr. Clancy moved on the farm, she had a talk with Mr. Leach, Sr., and that he then said at his death "they [Mr. and Mrs. Clancy] were to have the homestead for taking care of him and Mrs. Leach."

The estate of David Clancy now presents a claim against the estate of Neal Leach, Sr., for services rendered in taking care of Neal Leach, Sr., and his wife from 1868 to the time of their deaths. The printed record contains no statement of their claim. Claimant introduced testimony to the effect that it was worth five dollars per week to take care of Neal Leach, Sr., from December, 1868, to the time of his death, and that it was worth a little less to take care of his wife during her life. The theory of claimant is that the arrangement was that Mr. Clancy was to have the farm for taking care of Mr. Leach, Sr., and his wife during their lives. Apparently conceding that he was not in condition to enforce this claim, his estate now seeks to recover compensation for the care of them. The court directed a verdict for the defendant.

*Frank E. Durning* and *Herman W. Stevens*, for appellant.

*William H. Burgess* and *Fred S. Veits*, for appellee.

GRANT, J. (*after stating the facts*). Thirty-two years have elapsed since the alleged agreement upon which claimant bases the right of recovery was made. It rested entirely in parol. All the parties to it are dead. The testimony of Phillips and of Mrs. Taswell, both of whom

were witnesses for the claimant, is in direct conflict. If the testimony of Phillips is to be believed, Neal Leach, Jr., agreed to compensate Mr. Clancy for the care of his father and mother. The will, made about three years later, is consistent with that theory. If the testimony of Mrs. Taswell be true, then there was some arrangement or understanding by which Mr. Clancy should have the property for taking care of these old people. No case better illustrates the uncertainty of human recollection of conversations after a lapse of 32 years. The best and most reliable testimony is that of the will of Neal Leach, Sr., executed three years after it is insisted this agreement was made. That conclusively shows the understanding of Mr. Leach and his wife, and also of Mr. and Mrs. Clancy, who were present when the will was made, and made no objection thereto. Mr. and Mrs. Clancy had the benefit of the entire use of this farm during their lives, and their children after them. This would seem to be a reasonable compensation for the care of Mr. and Mrs. Leach while they lived. It is not, however, improbable that Neal Leach, Jr., paid Mr. Clancy under the arrangement as testified to by Mr. Phillips. We agree with the circuit judge that the execution of this will, executed in the presence of Mr. and Mrs. Clancy with a full knowledge of its contents, is a conclusive answer to the claim now set up.

The judgment is affirmed.

MONTGOMERY, C. J., MOORE and LONG, JJ., concurred. HOOKER, J., did not sit.